IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| EARNEST HEISKILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:14CV391 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Earnest Heiskill ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.   PROCEDURAL HISTORY

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income Benefits on April 21, 2011, alleging a disability onset date of August 1, 2009, later amended to March 31, 2011. (Tr. at 224-34, 9, 23.)[1] His applications were denied initially (Tr. at 64-97) and upon reconsideration (Tr. at 98-133). Thereafter, Plaintiff requested an

---
[1] Transcript citations refer to the Sealed Administrative Record [Doc. #10].

administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 162-63.) Plaintiff attended the subsequent hearing on October 18, 2012, along with his attorney and an impartial vocational expert. At the hearing, Plaintiff amended his alleged onset date to March 31, 2011. (Tr. at 9.)

The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act. (Tr. at 18), and on March 21, 2014, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-8).

II. <u>LEGAL STANDARD</u>

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." <u>Hines v. Barnhart</u>, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such an administrative] decision . . . is extremely limited." <u>Frady v. Harris</u>, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." <u>Hancock v. Astrue</u>, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Hunter v. Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1993) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted).

"If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

"The Commissioner uses a five-step process to evaluate disability claims."  Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)).  "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy."  Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry.  For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.'  If the claimant is working, benefits are denied.  The second step determines if the claimant is 'severely' disabled.  If not, benefits are denied."  Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled."  Mastro, 270 F.3d at 177.  Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')."  Id. at 179.[3]  Step four then requires the ALJ to assess whether, based on that RFC,

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations."  Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)."  Hall, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)."  Hines, 453 F.3d at 562-63.

the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his alleged onset date. Plaintiff therefore met his burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments: human immunodeficiency virus, diabetes mellitus, hypertension, congestive heart failure, carpal tunnel syndrome, major depression, and post-traumatic stress disorder. (Tr. at 11.) The ALJ found at step three that none of these impairments met or equaled a disability listing. (Tr. at 11-12.) Therefore, the ALJ assessed Plaintiff's RFC and determined that he could perform light work with the following nonexertional limitations:

> He is able to perform tasks requiring frequent fingering and handling; has a decrease in ability to concentrate on and attend to work tasks to the extent that [he] can only do simple, routine[,] and repetitive tasks (i.e., can apply commonsense understanding to carry out instructions furnished in written, oral[,] or diagrammatic form and deal with problems involving several concrete variables in or from standardized situations); is able to interact with co-workers, supervisors[,] and the public on occasional basis and [is] unable to work at jobs requiring complex decision making, constant change[,] or dealing with crisis situations.

(Tr. at 12-13.) Based on this determination, the ALJ found under step four of the analysis that Plaintiff could not return to any of his past relevant work. (Tr. at 17.) However, based on the vocational expert's testimony, the ALJ determined at step five, that, given Plaintiff's age, education, work experience, and RFC, he could perform other jobs available in the national economy. (Tr. at 17-18.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 18.)

Plaintiff now argues that substantial evidence supports neither the ALJ's step three determination nor his RFC assessment. Specifically, at step three, Plaintiff contends that the ALJ failed to appropriately weigh relevant opinion evidence in finding that Plaintiff's mental impairments did not meet 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.04 (hereinafter "Listing 12.04"). Plaintiff then challenges the standing, walking, handling, and fingering requirements incorporated in his RFC. (Pl.'s Br. [Doc. #14] at 2.) As set out below, the Court ultimately agrees that the ALJ failed to adequately explain the weight given to Plaintiff's treating physician's opinion, particularly with respect to the listing determination in this case. Because remand is required on this basis, at this time the Court need not consider the additional issues raised by Plaintiff.

6

A. Listing 12.04

Plaintiff first argues that the relevant medical evidence supports a finding that his depression meets or medically equals Listing 12.04. Listing 12.04 encompasses affective disorders, including depressive, manic, and bipolar syndromes, and may be met in one of two ways. Most commonly, a claimant first must manifest certain paragraph A criteria, i.e., specific symptoms set out in the listing itself. Pertaining to depression, a claimant must provide medical documentation of at least four of the following:

    a. Anhedonia or pervasive loss of interest in almost all activities; or
    b. Appetite disturbance with change in weight; or
    c. Sleep disturbance; or
    d. Psychomotor agitation or retardations; or
    e. Decreased energy; or
    f. Feelings of guilt or worthlessness; or
    g. Difficulty concentrating or thinking; or
    h. Thoughts of suicide; or
    i. Hallucinations, delusions, or paranoid thinking.

20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.04(A)(1). These criteria, in turn, must result in at least two of the following paragraph B criteria:

    1. Marked restriction of activities of daily living; or
    2. Marked difficulties in maintaining social functioning; or
    3. Marked difficulties in maintaining concentration, persistence, or pace; or
    4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.04(B). In other words, a claimant must meet both paragraphs A and B.[4]

In challenging the ALJ's step three finding, Plaintiff focuses on the ALJ's treatment of the underlying opinion evidence offered by his treating psychiatrist, Dr. Monica Slubicki,

---

[4] Alternatively, a claimant may meet the criteria of 12.04(C) alone. However, in the present case, Plaintiff does not claim that his depression meets these alternative criteria.

7

which supports his claim of a listing level impairment, and which is consistent with the opinion of a licensed clinical social worker, Katie Jorgensen, who had been working with Plaintiff for over 3 years. Both Ms. Jorgensen and Dr. Slubicki opined that Plaintiff exhibited eight of the nine characteristics described in paragraph A of Listing 12.04, as well as marked difficulties in maintaining social functioning and maintaining concentration, persistence, or pace, as described in paragraph B. (Tr. at 794-95, 799.) In short, both opinions concluded that Plaintiff met the criteria of Listing 12.04. Plaintiff contends that the ALJ erred in assigning limited weight to these opinions, and that substantial evidence fails to support the ALJ's listing analysis.

Dr. Slubicki is a treating physician, and her opinion must therefore be evaluated in accordance with 20 C.F.R. §§ 404.1527(c) and 416.927(c), better known as the "treating physician rule." The treating physician rule generally requires an ALJ to give controlling weight to the well-supported opinion of a treating source as to the nature and severity of a claimant's impairment, based on the ability of treating sources to

> provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). However, if a treating source's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record," it is not entitled to controlling weight. See Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5; 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2); see also Craig, 76 F.3d at 590; Mastro, 270 F.3d

at 178. Instead, the opinion must be evaluated and weighed using all of the factors provided in 20 C.F.R. § 416.927(c)(2)(i)-(c)(6) and § 404.1527(c)(2)(i)-(c)(6), including (1) the length of the treatment relationship, (2) the frequency of examination, (3) the nature and extent of the treatment relationship, (4) the supportability of the opinion, (5) the consistency of the opinion with the record, (6) whether the source is a specialist, and (7) any other factors that may support or contradict the opinion.

Where an ALJ does not give controlling weight to a treating source opinion, she must "give good reasons in [her] . . . decision for the weight" assigned, taking the above factors into account. 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). "This requires the ALJ to provide sufficient explanation for 'meaningful review' by the courts." Thompson v. Colvin, No. 1:09CV278, 2014 WL 185218, at *5 (M.D.N.C. Jan. 15, 2014) (quotations omitted); see also SSR 96-2p (noting that the decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight").

In the present case, the ALJ gave "limited weight to Dr. Slubicki's opinion in Exhibit 17F as the opinion contradicts her treatment notes and GAF scores." (Tr. at 16 (citing Tr. at 794-97).) The administrative decision does not specifically recount the details of this opinion, which, as noted above, posits that Plaintiff's depression results in marked difficulties in both social functioning and maintaining concentration, persistence, or pace.

(Tr. at 795.)[5] However, the ALJ's discussion of Dr. Slubicki's treatment notes reads as follows:

> Monica N. Slubicki, M.D., began treating the claimant on December 8, 2011. During his March 6, 2012 visit, Dr. Slubicki discussed the claimant's inability to follow through on things. Dr. Slubicki reported the claimant was focused on getting disability benefits. The claimant admitted that he was still taking Remeron, but not Abilify. He expressed anxiety concerning his situation. His mood and affect were depressed and constricted. On April 19, 2012, the claimant reported that he had reapplied with the patients' assistance program (PAP) to obtain Abilify. Dr. Slubicki opined that the claimant had moderate difficulty in social and occupational functioning with [a] GAF score of 60.

(Tr. at 15.)

The above paragraph fails to note anything in Dr. Slubicki's treatment notes, aside from Plaintiff's Global Assessment of Functioning, or GAF, score, which undermines her later findings of marked difficulties in social functioning and maintaining concentration, persistence, or pace, nor are conflicts between Dr. Slubicki's treatment notes and her opinion apparent elsewhere. Rather, Dr. Slubicki's records reveal that Plaintiff cried often and felt overwhelmed and angry during the relevant time period. (Tr. at 621, 625, 632, 636.) He also experienced chronic intermittent suicidal and homicidal ideation. (Tr. at 632-33, 636.) Although the ALJ noted Plaintiff's "focus . . . on getting disability benefits" during his treatment by Dr. Slubicki (Tr. at 15, 625), the ALJ never referenced this as a reason for discounting Dr. Slubicki's opinion. See Sec. & Exch. Comm'n v. Chenery Corp., 318 U.S. 80, 87 (1943) (courts must review administrative decisions on the grounds upon which the record discloses the action was based).

---

[5] The opinion in question, completed on October 12, 2012, consists of a checklist setting out the paragraph A and B criteria from Listing 12.04. Regarding paragraph B, the evaluating physician is then asked to place a checkmark by "yes" or "no" indicating whether the patient's depression has "resulted in . . . marked" difficulties in terms of daily living, social functioning, and/or maintaining concentration, persistence, or pace. (Tr. at 794-95.) Dr. Slubicki checked "yes" for the two latter categories. (Tr. at 795.)

10

Because Dr. Slubicki's treatment notes fail to contradict her opinion as the ALJ alleged, the GAF scores provide the ALJ's sole, remaining basis for discounting Dr. Slubicki's opinion. Until 2013, mental health clinicians commonly used GAF scores to estimate an individual's overall functioning level at a given point in time. Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 32 (4th ed. 2000)). A score between 51 and 60 indicated "Moderate symptoms (e.g. flat affect and circumlocutory speech, occasional panic attacks) *or* moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." Id. at 34. In contrast, a score between 41 and 50 indicated "Serious symptoms," which may include suicidal ideation or the inability to keep a job. Id. However, even during their years of wide usage in the mental health field, GAF scores had "no direct legal or medical correlation to the severity requirements of social security regulations." Powell v. Astrue, 927 F. Supp. 2d 267, 273 (W.D.N.C. 2013) (citing Oliver v. Comm'r of Soc. Sec., 415 Fed. App'x 681, 684 (6th Cir. 2011)). Rather, they were "intended to be used to make treatment decisions." Powell, 927 F. Supp. 2d at 273 (citations omitted).

As this Court detailed in Emrich v. Colvin, the usefulness of GAF scores in the social security context came under further scrutiny when, in May 2013,[6]

> the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders ("DSM") abandoned the use of GAF scoring altogether. Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 16 (5th ed. 2013) (abandoning use of GAF scoring "for several reasons, including its lack of conceptual clarity . . . and questionable psychometrics in routine practice"). In Administrative Message 13066 (AM–13066), effective July 22, 2013, the SSA acknowledged that the DSM had abandoned use of GAF

---

[6] The ALJ issued his decision in this case on November 16, 2012, and therefore did not have the benefit of the SSA's further guidance.

11

scoring and instructed ALJs that they should still consider GAF scores as opinion evidence in some circumstances. The SSA explained,

> For purposes of the Social Security disability programs, when it comes from an acceptable medical source, a GAF rating is a medical opinion as defined in 20 CFR §§ 404.1527(a)(2) and 416.927(a)(2). An adjudicator considers a GAF score with all of the relevant evidence in the case file and weighs a GAF rating as required by §§ 20 CFR 404.1527(c), 416.927(c), and SSR 06–03p, while keeping the following in mind:
>
> The GAF is unlike most other opinion evidence we evaluate because it is a rating. However, as with other opinion evidence, a GAF needs supporting evidence to be given much weight. By itself, the GAF cannot be used to "raise" or "lower" someone's level of function. The GAF is only a snapshot opinion about the level of functioning. It is one opinion that we consider with all the evidence about a person's functioning. Unless the clinician clearly explains the reasons behind his or her GAF rating, and the period to which the rating applies, it does not provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis.
>
> A GAF score is never dispositive of impairment severity.

Emrich v. Colvin, __ F. Supp. 3d __, 2015 WL 867287, at *10 (M.D.N.C. 2015) (quoting AM-13066). Accordingly, courts have found that "inconsistent GAF score[s] alone, without further context and additional evidence, [are] insufficient to discount a treating physician's opinions." Parker v. Colvin, No. 0:12-cv-00153-DCN, 2014 WL 4793711, at *3-4 (D.S.C. Sept. 25, 2014); see also Noble v. Colvin, No. CV-13-00113-JTR, 2014 WL 1883799, at *6-9 (E.D. Wash. May 12, 2014).

Here, as noted above, the GAF scores provide the ALJ's sole remaining basis for discounting Dr. Slubicki's opinion. As explained above, this basis, without more, is insufficient. Likewise, to the extent that the ALJ asserted that "Dr. Slubicki opined that the claimant had moderate difficulty in social and occupational functioning," that assertion is

12

again based only on the degree of limitation typically exhibited by a patient with a GAF score of 60, the score assigned to Plaintiff during three of his appointments. (See Tr. at 15, 619, 623, 627.) Moreover, Dr. Slubicki treated Plaintiff five times between December 2011 and May 2012, during which time she rated Plaintiff's GAF as 50 on two occasions, and 60 on the remaining three. (Tr. at 619, 623, 627, 634, 638.) The ALJ never mentions Plaintiff's lower GAF scores. These scores, chronicling "serious symptoms," clearly belie the ALJ's stated reason for finding Dr. Slubicki's opinion inconsistent.[7] In sum, the reliance on Plaintiff's GAF scores is not a sufficient basis for assigning limited weight to Dr. Slubicki's opinion.

Plaintiff also cites to the opinion of Ms. Jorgensen, the licensed clinical social worker who had worked with him for 3 years and who found the same limitations as Dr. Slubicki. Licensed clinical social workers are not "acceptable medical sources" as defined in 20 C.F.R. § 404.1527, and, as such, their opinions are never entitled to controlling weight. However, as explained in Social Security Ruling ("SSR") 06-03p, the opinion of a licensed clinical social worker must still be considered and may still may be given great weight when considered in the context of the record as a whole.

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the

---

[7] In her brief, the Commissioner alleges inconsistencies between Dr. Slubicki's opinion and the opinions of three non-treating physicians: Drs. Horwitz, Gibbs, and Herrera. (Def.'s Br. [Doc. #16] at 12-13.) However, the ALJ never mentioned such inconsistencies in his decision, let alone provided them as additional bases for assigning limited weight to Dr. Slubicki's opinion. See Chenery Corp., 318 U.S. at 87; see also Snell v. Apfel, 177 F.3d 128, 134 (2d Cir.1999) (a reviewing court "may not accept . . . counsel's *post hoc* rationalizations for agency action"). On remand, the ALJ should clearly explain his rationale for the relative weights assigned to all of the medical opinions of record, particularly that of Dr. Slubicki, as a treating physician. See 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2).

> treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.
>
> ….
>
> As set forth in regulations at 20 CFR 404.1527(b) and 416.927(b), [the Commissioner must] consider all relevant evidence in the case record when we make a determination or decision about whether the individual is disabled. Evidence includes, but is not limited to, opinion evidence from "acceptable medical sources," medical sources who are not "acceptable medical sources," and "non-medical sources" who have seen the individual in their professional capacity. The weight to which such evidence may be entitled will vary according to the particular facts of the case, the source of the opinion, including that source's qualifications, the issue(s) that the opinion is about, and many other factors.

SSR 06-03p, 2006 WL 2329939, at *3-*4, *6; see also Foster v. Astrue, 826 F. Supp. 2d 884, 886 (E.D.N.C. 2011) ("SSR 06–03p dictates that ALJs must at least consider the opinions of these non-acceptable medical sources, especially when there is evidence in the record to suggest that a non-acceptable medical source had a lengthy relationship with the claimant and can present relevant evidence as to an opinion about the claimant's impairment or ability to work."). In the present case, it appears that the real concern is not the ALJ's treatment of Ms. Jorgensen's opinion standing alone, but rather the ALJ's failure to explain the limited weight given to Dr. Slubicki's treating source opinion, particularly in light of the additional support provided by the opinion of Ms. Jorgensen. As discussed above, the Court concludes that the ALJ's failure to adequately explain the weight given to the treating source opinion of Dr. Slubicki warrants remand in this case, as it is within the province of the ALJ – not the Court – to weigh the evidence in light of the applicable regulations.

Finally, the Court notes that Plaintiff has filed an Addendum [Doc. #17], raising the potential applicability of the decision of the Court of Appeals for the Fourth Circuit in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015). The Fourth Circuit's decision in Mascio may be implicated in the present case. However, the Court need not order further briefing on the Macio issue in this case, in light of the concerns and issues outlined above. On remand, the ALJ can address the issues noted herein and the additional issues raised by Plaintiff, including the potential Mascio issues.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this Recommendation. To this extent, Defendant's Motion for Judgment on the Pleadings [Doc. #15] should be DENIED, and Plaintiff's Motion for Judgment on the Pleadings [Doc. #13] should be GRANTED. However, to the extent that Plaintiff's motion seeks an immediate award of benefits, it should be DENIED.

This, the 11th day of September, 2015.

        /s/ Joi Elizabeth Peake
        United States Magistrate Judge